IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 18-cv-1766-WJM

TONY HOLT,

     Plaintiff,

v.

ANDREW M. SAUL, Acting Commissioner of Social Security[1],

     Defendant.

---

## ORDER VACATING AND REMANDING DECISION
## OF THE COMMISSIONER OF SOCIAL SECURITY

---

THIS MATTER is before the Court on review of the Commissioner's decision to deny Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income. Plaintiff filed an Opening Brief on November 13, 2018 (ECF No. 17), and the Commissioner filed a Response on January 2, 2019 (ECF No. 21). A Reply was not filed. For the reasons described below, the Commissioner's decision to deny Plaintiff's application is vacated and this case is remanded for further proceedings.

## I. BACKGROUND

Plaintiff was born on July 30, 1969, and was 45 years on the alleged disability onset date of April 15, 2015. (Record ("R."), ECF No. 10, at 48, 61.) He completed two

---

[1] On June 4, 2019, Congress confirmed Andrew M. Saul as the Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

years of college, and had past relevant work as a plumber and welder, both of which were heavy, skilled jobs. (*Id*. 61, 92, 253.)

Plaintiff protectively applied for Disability Income Benefits and Supplemental Security Income in October 2015. (R. 72.) He alleged disability beginning April 25, 2015, due to a combination of physical and psychological impairments. (*Id*. 252, 267.)

Plaintiff's applications were denied (R. 142–152), and he requested an administrative hearing before an Administrative Law Judge ("ALJ") (*id*. 153, 169–71). A hearing was held on Plaintiff's claim on December 12, 2017. (*Id*. 69–97.)

Plaintiff testified at the hearing that he had undergone three shoulder surgeries, and that he had problems raising his hands over his head with any weight. (R. 82–83.) He stated that his treating physician Dr. Laurel Verant and surgeon Dr. Jennifer Fitzpatrick restricted him to picking up and carrying no more than eight pounds of weight. (*Id*. 85–86.)[2] Plaintiff testified that his lower back and shoulders "constantly hurt", that his spine and back gives him pain "all the time", and that he "constantly" has muscle spasms in his lower back. (*Id*. 84.) He has to lie down three to four hours during the day because his medication makes him sleepy, dizzy, and nauseated, and he has insomnia. (*Id*. 86.)

As to his work capacity, Plaintiff testified that in an eight hour day the maximum he could sit and stand was for about an hour and a half to an hour and forty-five minutes. (R. 83–85.) He could sit for 15 minutes at a time in an hour, and could "barely

---

[2] The ALJ incorrectly referred to Plaintiff's treating physician as Dr. Laurel Vincent. (*Id*. 56.)

walk a block" without "losing his breath" and needing to rest.  (*Id*.)  Plaintiff also testified

to memory and concentration problems, and that he has anger problems that make it

difficult for him to get along with people.  (*Id*. 88–90.)

## II. THE ALJ'S DECISION

The ALJ denied Plaintiff's claim for benefits in a decision dated March 8, 2018.

(R. 43-68.)  In the sequential evaluation process required by law, the ALJ found at step

one that Plaintiff met the insured status requirements of the Social Security Act through

December 31, 2017, and that Plaintiff had not engaged in substantial gainful activity

since April 25, 2015, the alleged onset date.  (*Id*. 48.)

At step two, the ALJ found that Plaintiff has the following severe impairments:

"degenerative disc disease (DDD) of the lumbar spine, osteoarthritis of the bilateral

shoulders, obesity, mood disorder, anti-social personality traits, and anxiety disorder[.]"

(R. 48.)  At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*. 49.)

As to the residual functional capacity ("RFC"), the ALJ found that Plaintiff can

perform light work "except the claimant can occasionally lift and/or carry 20 pounds and

frequently lift and/or carry 10 pounds."  (R. 52.)  She further found:

> He can stand and/or walk for six hours in an eight-hour workday, and can
> sit for more than six hours in an eight-hour workday. The claimant can
> frequently climb ladders, can climb ramps and stairs without limitation,
> can balance without limitation, and can frequently stoop, and no limitation
> on the ability to kneel, crouch, or crawl. He is able to reach overhead
> frequently with the bilateral upper extremities, and has no other
> manipulative limitations. The claimant should not work more than

frequently at unprotected heights or more than frequently if operating heavy equipment. He can understand and remember moderately complex and detailed instructions that require independent work that can be learned or mastered within a six-month period. The claimant can sustain concentration, persistence, or pace for those instructions over a typical workday and workweek; however, work duties should not require the claimant to interact with the general public, but he could tolerate incidental interactions with the public. He can tolerate occasional interactions with co-workers and supervisors, occasional work changes, he is able to make independent work decisions, and can travel and recognize and avoid work hazards.

(*Id.*)

At step four, the ALJ determined that Plaintiff is unable to perform his past relevant work. (R. 61.) At step five, taking into account Plaintiff's age (45 at the alleged onset date), education, work experience, and RFC, the ALJ determined with assistance from a vocational expert that Plaintiff could perform jobs such as Assembler of Small Products (Dictionary of Occupational Titles ("DOT") # 706.684-022), Cleaner (DOT # 323.687-014), and Gate Guard (DOT # 372.667-030). (*Id.* 62, 94.) She found that these jobs exist in significant numbers in the national economy. (*Id.* 61–62.) The ALJ thus found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 25, 2015, through the date of this decision." (*Id.* 62.)

The Appeals Council declined Plaintiff's request for review. (R. 1–4.) Thus, the ALJ's decision became final for purposes of judicial review.

### III. LEGAL STANDARD

A Court's review of the determination that a claimant is not disabled is limited to determining whether the record contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied.

*Hamilton v. Sec'y of Health and Human Services*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

A court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. However, it "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## IV. ANALYSIS

### A.   The Weighing of the Medical Evidence

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate and weigh the medical evidence and source opinions. He asserts that the ALJ gave the greatest weight to the most outdated medical opinions, which were made by the state agency physicians, and the least weight to the opinions of the treating medical providers.

The ALJ stated as to Plaintiff's physical impairments that she considered and gave "great weight" to the opinion of Dr. Virginia Thommen, a state agency medical consultant. (R. 56.) The ALJ gave "partial weight" to the consultative opinion of Dr. Carmen Wong. (*Id*.) Little weight was given to the opinion of treating physician

Dr. Laurel Verant.  (*Id*.)  The ALJ gave no weight to the opinions of Dr. Michael McGuinn "and an unknown physician" that Plaintiff was disabled.  (*Id*. 57.)  As to Plaintiff's mental impairments, the ALJ gave "great weight" to the opinion of state agency physician Dr. Ellen Ryan.  (R. 59.)  She gave "partial weight" to the opinion of licensed social worker Devona Walter, and "little weight" to the opinion of treating psychiatrist Dr. Charles Mellon.  (*Id*.)

The Court finds that the ALJ erred in her weighing of the treating source opinions, requiring reversal and a remand to the Commissioner.  "There are specific rules of law that must be followed in weighing particular types of evidence in disability cases."  *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).  "Failure to follow these rules constitutes reversible error."  *Id*.

1.  Plaintiff's Physical Impairments

Treating physician Dr. Verant provided a medical source statement in November 2017.  (R. 2125–29.)  Dr. Verant diagnosed lumber degenerative disc disease, mild stenosis, "bipolar I" disorder, PTSD, anxiety and depression.  (*Id*. 2125.)  She stated that Plaintiff had daily chronic pain that is "constant," daily nausea, shortness of breath, and chronic fatigue.  (*Id*. 2125, 2128.)  Clinical findings upon which Dr. Verant based her opinion included lumbar and shoulder MRIs.  (*Id*. 2125.)  She stated that Plaintiff had adverse effects from his medication, including nausea, dizziness, and drowsiness, and that this made it "unsafe" for Plaintiff to work.  (*Id*. 2125, 2128.)

Dr. Verant opined, based on Plaintiff's combined physical and psychological impairments, that he would be limited to less than a full range of sedentary work.  (R.

2128.)  She also found that Plaintiff could sit, stand and walk less than two hours in an

eight hour work day; could sit for 10 minutes and stand for 15 minutes at a time;

needed to be able to take an unscheduled break ever hour for 15 minutes; had

manipulative limitations, including 0% ability to reach his arms out in front of his body

and overhead; would be off-task 25% of the time or more, would be incapable of even

low stress work; and would be absent more than four days per months due to his

symptoms.  (*Id*. 2126–27.)

The Court finds several errors with the ALJ's decision as to Dr. Verant.  First, the

ALJ did not determine whether Dr. Verant's opinion as a treating physician was entitled

to controlling weight.  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  Under

the required sequential analysis, the ALJ is first required to determine whether a

treating physician's opinion is "conclusive, i.e., is to be accorded 'controlling weight,' on

the matter to which it relates."  *Id*. (citation omitted).  "Such an opinion must be given

controlling weight if it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in the

record."  *Id*.  "If the opinion is deficient in either of these respects, it is not entitled to

controlling weight.  *Id*.

While it is evident that the ALJ did not give Dr. Verant's opinion controlling

weight, the ALJ did not conduct the required analysis on this issue. The ALJ thus did

not discuss the clinical findings upon which Dr. Verant based her opinion.  While she

stated that Dr. Verant's opinion was "inconsistent with and unsupported by the

evidence" (R. 56), she failed to acknowledge that it was supported by other medical

evidence.  Dr. Verant's opinion as to physical limitations were supported by the five

pound lifting limitation imposed by surgeon Dr. Fitzpatrick (*id*. 2087), as well as opinions

of total disability by two different doctors based on musculoskeletal impairments.

Dr. Verant's opinion that Plaintiff was incapable of even low stress work and would miss

multiple days of work per month was supported by Plaintiff's treating sources as to his

mental impairments, discussed in detail below.

The opinions as to disability were made by Dr. Michael McGuinn, who treated

Plaintiff at the Veterans Administration and completed a Med-9 form in November 2015

(*id*. 423), and the "unknown physician" referenced by the ALJ who completed a Med-9

form in August 2016 (*id*. 744).[3]  The ALJ gave these opinions of disability no weight

because they opined on an issue reserved to the Commissioner under potentially

different disability standards.  (*Id*. 58.)  While those reasons may be sufficient for not

giving the opinions controlling weight, they are insufficient for the purpose of evaluating

their consistency against that of Dr. Verant.[4]  Accordingly, the ALJ erred at the first step

of the controlling weight analysis.

Even if an opinion is not entitled to controlling weight, that is not the end of the

inquiry.  *Krauser*, 638 F.3d at 1330.  The treating physician's opinion is still entitled to

deference.  *Id*.  At the second step in the analysis, "the ALJ must make clear how much

---

[3] Plaintiff asserts that this physician was Jeremy R. Brown, D.O., who, along with other medical providers, treated Plaintiff at the Hanson Clinic.  (*Id*. 479–535.)

[4] While opinions as to disability are not dispositive, the ALJ is "still required to provide an evaluation of the opinions and explain his reasons for either rejecting or accepting them." *Mayberry v. Astrue*, 461 F. App'x 705, 708 (10th Cir. 2012); *see also* 20 C.F.R. § 404.1427(d)(1).

weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.*[5] The ALJ did not indicate that she gave any deference to Dr. Verant's opinion or that she considered the relevant factors in deciding what weight to give the opinion. The ALJ also did not state whether she rejected the opinion outright. The ALJ thus erred at both steps of the sequential evaluation. *See Langley v. Barnhart*, 373 F.3d 1116, 1120–21 (10th Cir. 2004) (finding error where the ALJ "completely rejected" a treating physician's opinion "once he determined it was not entitled to controlling weight, without any consideration of what lesser weight the opinion should be given or discussion of the relevant factors. . ."); *Andersen v. Astrue*, 319 F. App'x 712, 722 (10th Cir. 2009) (the apparent failure to consider any factor other than whether the opinion was supported by the record "makes the ALJ's reasoning insufficient[]").

The Court also finds that the ALJ erred as to the reasons she stated for giving little weight to Dr. Verant's opinion, *i.e.,* she did not give "good reasons" for her decision. *Krauser*, 638 F.3d at 1330. The ALJ first stated that "Dr. Verant's opinion is inconsistent with the claimant's report that he was able to trim trees despite his pain."

---

[5] Those factors include: "'(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.'" *Watkins v. Barnhart*, 350 F.3d 1298, 1301 (10th Cir. 2003) (citation omitted).

(R. 56.)  For proper context, however, the evidence is that Plaintiff had only attempted to do that activity once in August 2017, and there is no indication how long Plaintiff performed that activity.  (*Id*. 762.)  At the medical appointment where this activity was referenced, Plaintiff's surgeon, Dr. Fitzpatrick, reminded Plaintiff of the limitation she had set to avoid lifting greater than five pounds (*id.* 2087), stating she "[r]eviewed precautions as doing activity beyond recommendations" with him.  (*Id*. 762.)

The ALJ improperly imposed her lay judgment that this one-time activity of Plaintiff for some unspecified period of time meant that the significant limitations imposed by Dr. Verant related to Plaintiff's ability to work were not credible.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2004) ("'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") (citation omitted) (emphasis in original).  This one-time activity does not represent substantial evidence that would allow the ALJ to reject the functional limitations identified by Dr. Verant.  *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity").

In selectively relying on this one-time activity, the ALJ also disregarded the evidence that Plaintiff was severely limited in his activities of activities of daily living. The Disability Report stated that Plaintiff found household tasks "next to impossible" to do.  (R. 275.)  Plaintiff's Function Report stated that he did not do very many daily

activities, other than get food to eat and try to find a place to live (as Plaintiff was homeless), and that it was painful to do even basic personal care. (*Id*. 261–62.) Plaintiff said that he did no household chores. (*Id*. 262.) The ALJ noted that although Plaintiff can complete laundry once a week, he needs help lifting because it is painful for him. (*Id*. 53.) Yet the ALJ inexplicably relied only on the one-time activity of trimming trees to discount Dr. Verant's findings of pain. *See Krauser*, 638 F.3d at 1333 (it is necessary to look at the "actual activities" the plaintiff discusses as being difficult; spending ten to fifteen minutes doing yard work every week or two did not constitute "substantial work in the yard" as suggested by the ALJ). "[W]hen considered at a more detailed realistic level", the Court finds that Plaintiff's "activities are more consistent with his claims of significant physical limitation than with the ALJ's conclusion" as to Plaintiff's ability to work. *Id*.

The ALJ next stated that "[t]he claimant's normal strength upon examination also does not support Dr. [Verant's] references to the claimant's pain", citing to an October 2017 record of surgeon Dr. Fitzpatrick. (R. 56.) Again, this is an improper lay judgment by the ALJ. *See Romo v. Colvin*, 83 F. Supp. 3d 1116, 1121 (D. Colo. 2015) ("the ALJ's apparent conclusion that findings of normal strength, sensation, and reflexes were inconsistent with the limitations [the treating physician] suggested is hardly obvious, and certainly not one that the ALJ (or this court, for that matter) is qualified to make"). The ALJ further failed to recognize that pain may not be discounted "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms. . . ." *See* SSR 16-3p, 1996 WL 347186, at *6.

Moreover, in relying on Dr. Fitzpatrick's finding of "normal strength", the ALJ improperly selectively applied the evidence from that physician.  Dr. Fitzpatrick's findings actually provide support for Dr. Verant's opinion, not the ALJ's decision.  Thus, in July 2017 Dr. Fitzpatrick performed a "left shoulder arthroscopic rotator cuff (subscapularis) repair, subacromial decompression and open biceps tendinosis."  (R. 2087, 940.)  In the October 2017 follow-up record noted by the ALJ, Dr. Fitzpatrick found that while Plaintiff had intact strength on "Bear hug testing," he had "acute postprocedural pain," a "[c]omplete tear of left rotator cuff," tenderness, and limitation of motion.  (*Id*. 2087.)  She also noted that although Plaintiff's motion was improving, she instructed him to "[a]void lifting greater than 5 pounds arm at side."  (*Id*.)  Her findings are "specific medical findings" that the ALJ erred in rejecting "in the absence of conflicting evidence."  *Washington v. Shalala*, 37 F.3d 1437, 1441 (10th Cir. 1994).  An ALJ "may not pick and choose among medical reports, using portions of the evidence favorable to [her] position while ignoring other evidence."  *Keyes- Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (internal quotation marks omitted).

Rather than accepting the more recent November 2017 treating source opinion of Dr. Verant and the October 2017 findings of Dr. Fitzpatrick, the ALJ gave "great weight" to the April 2016 opinion of Dr. Thommen, the state agency examiner who had performed a records-only review.  (R. 56.)  The opinion of  Dr. Thommen was based on the evidence through March 2016, contained in Exhibits 1F through 8F.  (*Id*. 100–114, 120–134.)  Subsequently, over 1,400 pages of additional medical records were added to the record (contained in Exhibits 9F through 22F), which included diagnostic testing,

examinations, surgical procedures, as well as Dr. Fitzpatrick's findings and the treating

sources' opinions.  (*Id*. 744—2220.)  The United States Court of Appeal for the Tenth

Circuit has disfavored an ALJ's reliance on an outdated or stale opinion.   *Chapo v.

Astrue*, 682 F.3d 1285, 1292-1293 (10th Cir. 2012).[6]  Given the medical evidence that

came into the record after Dr. Thommen's opinion, it is reasonable to assume that her

opinion might have been different if she had the benefit of such information.

The ALJ gave greater weight to Dr. Thommen's opinion because it was

supported by certain clinical findings, including "discomfort with shoulder range of

motion, but normal strength and gait."  (R. 56)  Dr. Verant also, however, supported her

opinion by reference to specific clinical evidence and findings that the ALJ did not

discuss.  Dr. Verant's findings regarding Plaintiff's pain appears more consistent with

the longitudinal record in this case as discussed in more detail below in Section IV.B.,

*infra*.  The ALJ also gave great weight to Dr. Thommen's opinion because of her

familiarity with rules and regulations of the Social Security Administration.  (R. 56.)

However, "expertise in Social Security is neither necessary nor helpful in determining [a

person's functional impairments], and it would be error to credit one opinion of this type

over another simply on the basis of relative experience with Social Security."  *Bowe v.

Berryhill*, 2017 WL 6398271, at *8 n. 9 (D. Colo. Dec. 15, 2017).

In finding that Dr. Verant's opinion was inconsistent with other evidence, the ALJ

failed to recognize that "the ALJ's task is to examine the other physicians' reports 'to

---

[6] Dr. Wong's opinion of March 26, 2016 (*id*. 734–743), to which the ALJ gave "partial
weight" (*id*. 56), suffers from the same staleness problem.

see if [they] outweigh [ ] the treating physician's report, not the other way around.'"

*Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citation and internal quotation marks omitted). A treating physician's opinion is generally given more weight than that of a nonexamining physician due to the treating physician's "'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. . . .'" *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citation omitted). The ALJ did not properly take this into account.

Based on the foregoing, the Court finds that the ALJ erred in weighing the opinions regarding Plaintiff's physical impairments.

2.     Plaintiff's Mental Impairments

As to Plaintiff's mental impairments, treating psychiatrist Charles Mellon, M.D., and therapist Devona Walter, LCSW, provided medical source statements dated June 5, 2017 (R. 752–757), and May 19, 2017 (*id*. 745–51), respectively. Despite acknowledging that Dr. Mellon was Plaintiff's treating psychiatrist, the ALJ gave the least weight to Dr. Mellon's opinion, instead giving great weight to an earlier April 2016 opinion from state agency physician Dr. Ryan. (*Id*. 59.)

Dr. Mellon opined that Plaintiff had a mood disorder that resulted in marked or serious limitations in the ability to (1) "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms"; (2) "[a]ccept instructions and respond appropriately to criticism from supervisors"; (3) "[r]espond appropriately to usual work situations and to changes in a routine work setting"; (4) direct, control or

plan activities of others; and (5) "influenc[e] people in their opinions, attitudes and judgments." (R. 754–55.)  Dr. Mellon also opined that Plaintiff had numerous moderate limitations that impacted Plaintiff's ability to work.  (*Id*.)  He stated that Plaintiff would be expected to miss work about three days per month from his impairments or treatment, and that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation.  (*Id*. 756.)

The Court finds that the ALJ erred with respect to her weighing of Dr. Mellon's opinion.  First, as with Dr. Verant, the ALJ failed to conduct the required evaluation as to whether Dr. Mellon's opinion was entitled to controlling weight.  Second, the ALJ's reasons for giving little weight to Dr. Mellon's opinion are not supported by substantial evidence.  While the ALJ found that Dr. Mellon's opinion was inconsistent with the other evidence (R. 59), it was largely consistent with the other treating sources' opinions; namely, the opinions of licensed social worker Devona Walter and Dr. Verant.  Like Dr. Mellon, Ms. Walter opined as to both serious and moderate limitations in many areas needed to perform unskilled work, and Ms. Walter and Dr. Verant opined that Plaintiff would miss about four days of work per month due to his impairments.  (*Id*. 747–50.)  The ALJ did not compare the consistency of these opinions with that of Dr. Mellon for purposes of the controlling weight analysis.  The ALJ also did not adopt the treating sources' finding that Plaintiff would miss multiple days of work per month (*id*. 59), or many of the serious limitations noted by Ms. Walter.[7]

_____

[7] Some of the reasons the ALJ gave for affording only partial weight to Ms. Walter's opinion also are not valid.  While the ALJ correctly noted that Ms. Walter declined to sign a Med-9 form finding Plaintiff disabled in 2015 (*id*.), by 2017 she had treated Plaintiff long enough

Dr. Mellon's opinion was also rejected by the ALJ because she found that his statement that Plaintiff was stable with treatment was inconsistent with his assessed limitations. (R. 59.) Further, she found that "the evidence of the claimant being cooperative overall and having a good fund of information and abilities on recall is inconsistent with [Dr.] Mellon's opinion." (*Id.*) The ALJ was again making improper lay judgments, and these types of arguments have been rejected by various courts.

To this point, the Third Circuit has found that it was improper for the ALJ to reject a physician's opinion based on a finding that the plaintiff was stable with medication. *Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000). It noted that for a person who has mental impairments, "the work environment is completely different from home or a mental health clinic." *Id.* The court thus found that the physician's "observations that Morales is 'stable and well controlled with medication' during treatment does not support the medical conclusion that Morales can return to work." *Id.* The court also noted that despite the stability finding, the physician opined that Morales was markedly limited in a number of relevant work-related activities," and that "[o]ther information in the treatment records supports this opinion." *Id.* The court concluded that the physician's opinion "shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that

_____

to form her opinion. Similarly, while Ms. Walter reported that Plaintiff's limitations first began in adolescence (*id.* 751), she did not address the severity of the limitations at that time. Her finding on this issue is thus not necessarily inconsistent with the fact that Plaintiff had a significant work history. (*Id.* 59.) Ms. Walter's opinion could not also be discounted simply because she stated that assessing work limitations was difficult. To the extent the ALJ found that Ms. Walter's opinion was inadequate or inconsistent, the most prudent course would have been for the ALJ to contact Ms. Walter for clarification. *See* 20 C.F.R. § 404.1520b(b)(2).

accompany the work setting."  *Id.*; *see also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity[]").

Similarly, the Tenth Circuit has found that a consulting psychiatrist's observation of claimant's relative stability under nonstressful circumstances did not undercut the treating physicians' opinions about the plaintiff's inability to cope with the stress of handling people and demands in the work setting.  *Washington*, 37 F.3d at 1440–41. Judge John L. Kane of this Court found that "a person's ability to interact appropriately at the occasional medical appointment does not indicate that he or she can maintain the level of appropriate socialization necessary for a full-time job[]". *Jimenez v. Berryhill*, 300 F. Supp. 3d 1295, 1304 (D. Colo. 2018).

The Court also finds error with the ALJ's reliance on nonexamining state agency physician Dr. Ryan's opinion.  As with Dr. Thommen's opinion, Dr. Ryan's opinion was issued well before the opinions of Dr. Walter and Ms. Walter (and the other 1,400 pages of evidence added after her opinion), and is thus markedly stale.  Subsequent to Dr. Ryan's opinion, the record reflects that Plaintiff continued to have mood instability, anger issues, depression and anxiety, racing thoughts, panic, and irritability, even with treatment and psychotropic medications.  (*See, e.g.,* R. 577–78, 638, 724–25, 1987, 1990, 1994, 2147, 2153.)  The ALJ did not properly consider this evidence.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1269 (10th Cir. 2008) ("The ALJ must evaluate '*all*

relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation.'") (citations omitted) (emphasis in original).

In *Carpenter*, the Tenth Circuit found error where the ALJ "summarized the evidence from two mental health practitioners, but he failed to discuss all of the significantly probative evidence relevant to Mrs. Carpenter's mental impairment, discuss how he resolved the conflicts in this evidence, or discuss how he resolved the conflicts between his findings and the evidence." 537 F.3d at 1269. The Court finds this analysis equally applicable to the ALJ's decision in this case.

Accordingly, the Court finds that the ALJ also erred in weighing the opinions regarding Plaintiff's mental impairments. The ALJ's failure to weigh the medical evidence and the opinions of the treating medical providers means that the RFC is not supported by substantial evidence. *See Krauser*, 638 F.3d at 1332 (the treating physicians' "medical findings as to work-related limitations would, if accepted, impact the determination of RFC"). These errors require reversal and a remand.

On remand, rather than focusing separately on Plaintiff's physical and mental impairments as the ALJ did (R. 54–60), the ALJ must "consider the combined impacts of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original). For example, the ALJ discussed Dr. Verant's opinion only in connection with Plaintiff's physical impairments (R. 56), but her opinion was based on the combination of Plaintiff's mental *and* physical impairments, and the functional limitations she imposed reflect that. (*Id*. 2125–29.) The ALJ did not take this into account. The ALJ must also

-18-

consider Plaintiff's moderate mental impairments on remand. See *Jaramillo v. Colvin*, 576 F. App'x 870, 876–78 (10th Cir. 2014) (a moderate impairment "'supports the conclusion that the individual's capacity to perform the activity is impaired,'. . . and therefore must be related with sufficient precision in a dispositive hypothetical" question and in an RFC finding) (internal citation omitted).

**B.      Credibility Assessment**

Plaintiff next asserts that the ALJ erred in finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent" with the evidence. (R. 53–54.) "'Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation omitted). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (citation omitted).

Here, the Court finds that the ALJ's credibility analysis was not properly linked to substantial evidence. First and foremost, the ALJ did not conduct a proper pain analysis. *See Luna v. Bowen*, 834 F.2d 161, 163–66 (10th Cir. 1987). The ALJ found that Plaintiff's impairments could reasonably be expected to cause the symptoms. (R. 53.) Thus, the ALJ was required to consider all of the relevant evidence in determining whether Plaintiff is disabled by pain as well as the relevant factors identified by the Tenth Circuit. *Luna*, 834 F.2d at 163. Only after this analysis could the ALJ decide whether she "believes the claimant's assertions of severe pain." *Id.*

The ALJ referenced this analysis only in a cursory fashion. (R. 52–53.) The ALJ examined some of the objective medical evidence, a task that falls within *Luna*'s first step, highlighted various normal findings, and discussed purported inconsistencies to find that Plaintiff was not fully credible about his symptoms. (*Id*. 54–60.) However, she did not proceed to the second two steps in the *Luna* analysis, or state that she considered the relevant factors. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017). "The ALJ need not consider these factors in a formalistic way, but the substance must be there." *Id*. The substance is not present here, as the ALJ failed to consider many of the factors.

For example, the ALJ failed to consider that Plaintiff's treating sources opined that his symptoms are consistent with what could be reasonably expected from his impairments. (R. 748, 758, 2127.) Plaintiff's voluminous (and more recent) medical records also reflect that he was persistent in his attempts to find relief from his symptoms, regularly sought medical treatment, and was prescribed numerous psychotropic and pain medications. *See Hardman v. Barnhart*, 362 F.3d 676, 680 (10th Cir. 2004) (finding that the ALJ erred in not considering Plaintiff's "persistent attempts to find relief from his pain, his willingness to try various treatments for his pain, and his frequent contact with physicians concerning . . . pain-related complaints"). The ALJ also failed to consider that Plaintiff had significant side effects from his medications that Dr. Verant found made it "unsafe" for Plaintiff to work. (R. 2125, 2128.)

Plaintiff further asserts, and the Court agrees, that the ALJ did not consider whether the combined effect of all of his impairments affected Plaintiff's perception of

pain.  (*See* ECF No. 17 at 9.)  One factor to be considered in the pain analysis is "the possibility that psychological disorders combine with physical problems."  *Luna*, 834 F.2d at 166.  Treating physician Dr. Verant opined that Plaintiff had daily chronic pain, that emotional factors contribute to the severity of his symptoms, and that the psychological conditions affect his physical condition.  (R. 2125–26.)  Dr. Mellon and Ms. Walter also opined that Plaintiff's psychological conditions exacerbate Plaintiff's experience of pain (*id*. 756, 748), and Ms. Walter stated that "depression can exacerbate his physical condition[]" (*id*. 748).  The ALJ erred in not discussing this.  As the Ninth Circuit explained, "chronic pain syndrome "has both a physical and psychological component. . . . [p]ain merges into and becomes a part of the mental and psychological responses that produce the functional impairments"; thus, "the Commissioner must consider whether these impairments *taken together* result in limitations. . . ."  *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (citation omitted) (emphasis in original).

The ALJ's pain analysis here was "improper boilerplate" because the ALJ "merely recited the factors [s]he was supposed to address and did not link h[er] conclusions to the evidence or explain how [Plaintiff's] repeated attempts to find relief from pain, and all the drugs []he has been prescribed for pain, resulted in a conclusion that []he is unlimited in any regard by pain or the side effects from her pain medication."  *Carpenter*, 537 F.3d at 1268.  Accordingly, the case must be reversed and remanded on this issue as well.  *Brownrigg*, 688 F. App'x at 546.

The ALJ also made other errors in connection with her decision that Plaintiff's complaints about his symptoms were not fully credible. Some of the errors were addressed in Section IV.A, *supra*, as they were made in connection with the weighing of the treating physicians' opinions. For example, the Court found that the ALJ erred in relying on a finding of "normal strength on examination" and a one-time tree trimming activity to discount Dr. Verant's findings. These errors must be taken into account in adequately assessing Plaintiff's pain.

The ALJ also made a number of other improper lay judgments about Plaintiff's pain. For example, the ALJ noted that Plaintiff "reported pain that varied from six to 10 out of 10 on various treatment visits." (R. 54.) She then stated that "[b]ecause the claimant consistently had normal strength upon examination, the claimant has no limitations in his ability to climb ramps and stairs, balance, kneel, crouch, and crawl." (*Id*.) She further found that "[b]ecause the claimant had back and shoulder pain and tenderness on examination, the claimant could frequently climb ladders, ropes, and scaffolds, and stoop." (R. 55.)

These findings amount to mere speculation about what Plaintiff can do given his levels of pain. Moreover, the ALJ failed to take into account that "objective medical evidence of disabling pain need not consist of concrete physiological data alone but can consist of a medical doctor's clinical assessment as well. . . ." *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988); *see also Luna*, 834 F.2d at 165 (10th Cir. 1987) ("a lack of objective corroboration of the pain's severity cannot justify" disregarding subjective allegations of pain," as "the severity of pain is inherently subjective").

To the extent the ALJ rejected the treating physicians' assessment of pain because she did not believe Plaintiff, this was a substitution of her own judgment for that of the treating physicians. *See Sanchez v. Astrue*, 2009 WL 4810696, at *4 (D. Colo. Dec. 10, 2009). The physicians' pain assessments are medical findings that the ALJ could not reject without contrary evidence. *Washington*, 37 F.3d at 1441. An ALJ also may not reject the opinions of a treating physician "based merely on [the ALJ's] own speculative conclusion that the[ir] report[s] w[ere] based only on claimant's subjective complaints." *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *see also Sanchez*, 2009 WL 4810696, at *4 ("the ALJ's own negative assessment of plaintiff's credibility" was insufficient to discredit treating physician's opinion when "[n]othing in the record suggests that any treating or examining source considered plaintiff to be malingering or otherwise questioned the credibility of her subjective complaints of pain and other symptoms[]").

The ALJ is directed on remand to make a new credibility determination that follows the correct legal standards and considers the entire record. In doing so, the ALJ must reassess Plaintiff's pain without making improper lay judgments, and must conduct a proper analysis of pain under *Luna*.

## C.    The ALJ's Step Five Findings

The errors in weighing the medical evidence and Plaintiff's credibility impact the RFC upon which the step five finding is based. Accordingly, the ALJ's decision at step five is not supported by substantial evidence. For example, the Gate Guard job requires the ability to reach and handle occasionally, and the other jobs (Assembler of Small

Products and Cleaner) require frequent reaching and handling.  When the vocational expert was asked about the effects of the manipulative and other limitations endorsed by Dr. Verant, the expert testified that all jobs would be eliminated.  (R. 95.)  The ALJ is thus directed to reevaluate the step five findings upon remand.

The Court also agrees with Plaintiff that the ALJ erred in finding that Plaintiff could perform the job of Gate Guard, even under the RFC assessed by the ALJ, as this job exceeds the social limitations assessed by the ALJ. The RFC stated that work "should not require the claimant to interact with the general public, but he could tolerate incidental interactions with the public . . . and occasional interactions with co-workers and supervisors."  (R. 52.)  The Gate Guard job conflicts with this as it requires frequent talking with others.  *See* DICOT 372.667-303, 1991 WL 673099.  The ALJ was required to, and did not, inquire about and resolve the conflict between the vocational expert's testimony that Plaintiff could perform the Gate Guard job and the description of that job in the DOT.  *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009).

## V. <u>CONCLUSION</u>

For the reasons set forth above, it is ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further proceedings consistent with this Order, pursuant to sentence four in 42 U.S.C. § 405(g).

Dated this 16th day of September, 2019

BY THE COURT:

_____
William J. Martínez
United States District Judge